IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INVENTION SUBMISSION CORPORATION, d/b/a INVENTHELP and ROBERT J. SUSA, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> TAYLOR MACK ENTERPRISES, INC. and ZULAN BERRY, an individual, <br><br> Defendants. | Civil Action No. 21-15 |

**MEMORANDUM OPINION**

**I.   BACKGROUND**

Presently before the Court is Plaintiffs' Motion for Leave of Court to File Under Seal Complaint, Exhibit B to the Complaint, and Brief in Support of Motion for Preliminary Injunction (Doc. No. 1).  Plaintiffs filed this Motion contemporaneously with the filing of redacted versions of their Complaint[1] (Doc. No. 2), Motion for Preliminary Injunction (Doc. No. 4), and Brief in Support of Motion for Preliminary Injunction.  (Doc. No. 5).  Pursuant to the Court's February 5, 2021 Order, Plaintiffs filed a Supplemental Brief in Further Support of their Motion for Leave of Court to File Under Seal (Doc. No. 19) and Defendants filed a Response thereto.  (Doc. No. 21). Furthermore, Plaintiffs supplied the Court with unredacted copies of each of the filings at issue (Doc. Nos. 2, 5), and the Court has conducted an *in camera* inspection of those unredacted

---

[1] The Complaint asserts claims for misappropriation of trade secrets under the Defend Trade Secrets Act and Pennsylvania Uniform Trade Secrets Act, breach of contract, and unfair competition.

documents. Plaintiffs' Motion is now ripe for decision. For reasons explained below, the Motion will be granted in part and denied in part.

As alleged in the redacted Complaint, Plaintiffs invited Defendant Berry and other select sales professionals to a private meeting in November 2019 at which time Plaintiff Susa revealed a new line of services Plaintiffs intended to offer through a new invention services platform, along with detailed and specific plans relating to marketing and business strategies. (Doc. No. 2, ¶¶ 9, 31, 32). At that meeting, Plaintiff Susa provided Defendant Berry (and the other attendees) with copies of Exhibit B to the Complaint (which is a printed-out PowerPoint presentation) and other unspecified written materials regarding Plaintiffs' proprietary new business model. (*Id.*, ¶¶ 34, 35). Plaintiffs further allege that Defendants breached the parties' Regional Sales Director ("RSD") Agreement, (*see* Docket No. 2-1), and misappropriated the proprietary pricing, marketing, and business strategies contained in Exhibit B and presented at the meeting by using that information to create their own competing enterprise.

Plaintiffs' instant Motion seeks to seal from public access Exhibit B, (Docket No, 2-2), and certain specified averments contained in the Complaint and Brief in Support of their Motion for Preliminary Injunction because they contend those judicial records contain trade secrets and other proprietary and confidential information regarding the "sale and marketing of innovative new product and service offerings. . . ." (Doc. Nos. 1, ¶ 12; 19 at 5). Plaintiffs further contend that this "confidential marketing and business plan information" reflects the types of records that courts routinely seal, and that public disclosure of this information would harm their competitive standing in the marketplace, handicap their ability to compete by divulging confidential details as to pricing and marketing strategy, provide competitors an advantage when seeking to sell their products and services, and cause them defined and serious injury if released to the public. (Doc. Nos. 1, ¶¶ 3-

2

5, 10-11; 19 at 5-6). While Defendants do not contest the sealing of Exhibit B and related averments, they do not concede that these filings contain protected trade secrets. (*See generally* Doc. No. 21).

## II. APPLICABLE STANDARDS AND GENERAL FINDINGS

The public has a right to access certain judicial records and proceedings pursuant to common law and the First Amendment to the United States Constitution. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). The public's common law right to access judicial records (*i.e.*, documents filed with the court and documents that are incorporated in the court's adjudicatory proceedings) is presumed. *Id.* at 670 (citing *Goldstein v. Forbes* (*In re Cendant Corp.*), 260 F.3d 183, 192-93 (3d Cir. 2001)). This common law right of access "promotes public confidence in the judicial system"; "diminishes possibilities for injustice, incompetence, perjury, and fraud"; and "provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness." *Id.* at 677 (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)).

However, this "common law right of access is 'not absolute.'" *Avandia*, 924 F.3d at 672 (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). While the kinds of information courts protect from disclosure is narrow, courts do protect from disclosure "[d]ocuments containing trade secrets or other confidential business information." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166 (3d Cir. 1993). "[A]n interest in safeguarding a trade secret may overcome a presumption of openness." *Avandia*, 924 F.3d at 673 (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1073 (3d Cir. 1984)); *see also Cutsforth, Inc. v. Lemm Liquidating Co., LLC*, Civ. No. 17-1025, 2020 WL 772442 at *2-3 (W.D. Pa. Feb. 18, 2020) (sealing from public access trade secrets and other confidential

information that "derives independent economic value from not being generally known by others who can obtain economic value from its disclosure"). Indeed, "courts may permissibly seal judicial records 'where they are sources of business information that might harm a litigant's competitive standing.'" *Avandia*, 924 F.3d at 679 (quoting *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 662 (3d Cir. 1991)).

The party seeking to seal any part of a judicial record bears the burden of showing that "the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking closure." *Mine Safety Appliances Co. v. North River Ins. Co.*, 73 F. Supp. 3d 544, 560 (W.D. Pa. 2014) (citations omitted). The party seeking closure must show "that the interest in secrecy outweighs the presumption." *Id.* (quoting *Bank of Am.*, 800 F.2d at 344). In doing so, the party must establish that "the material [sought to be sealed] is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). Moreover, the injury must be shown with specificity. *Id.* (citing *Publicker*, 733 F.2d at 1071). "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* (quoting *In re Cendant Corp.*, 260 F.3d at 194).

When deciding to seal judicial records,[2] the district court must articulate "compelling, countervailing interests to be protected" through specific findings on the record concerning the

---

[2] An analysis for preserving the confidentiality of discovery materials through a protective order under Federal Rule of Civil Procedure 26 is conducted using the *Pansy* factors. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994); *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *see also Avandia*, 924 F.3d at 671. Some of the *Pansy* factors may provide guidance for a common law right of access analysis, but the *Pansy* factors do not displace the common law standard. *Avandia*, 924 F.3d at 676. The *Pansy* factors are as follows: "1. whether disclosure will violate any privacy interests; 2. whether the information is being sought for a legitimate purpose or for an improper purpose; 3. whether disclosure of the information will cause a party embarrassment; 4. whether confidentiality is being sought over information important to public health and safety; 5. whether the sharing of information among litigants will promote fairness and efficiency; 6. whether a party benefitting from the order of confidentiality is a public entity or official; and 7. whether the case involves issues important to the public." *Id.* at

effects of disclosure. *Avandia*, 924 F.3d at 672, 678. In doing so, a document-by-document review must be conducted to determine if "the strong presumption of openness can be overcome by the secrecy interests of private litigants." *Id.* at 673 (quoting *Leucadia*, 998 F.2d at 167). The district court must also "provide an opportunity for interested third parties to be heard." *Id.* at 672-73, 678 (citation omitted). *Avandia* further instructs this Court to consider whether the First Amendment right of public access attaches even if any materials at issue are permissibly sealed pursuant to the common law right of access. *Id.* at 673, 680.

Here, the Court first examines Exhibit B and notes that this document contains proprietary information[3] concerning Plaintiffs' new invention development service (including sample renderings), along with marketing and business strategies and related pricing and compensation structures. Based upon the limited record before the Court at this preliminary stage of the litigation, and based upon the individualized analysis of each proposed redaction or seal request as specified *infra*, the Court finds that Exhibit B and certain averments contained in the Complaint and Brief contain the type of information that derives independent economic value from not being generally known by others who can obtain economic value from its disclosure. The Court further finds that if these particular pieces of information were to be released to the public it would materially harm Plaintiffs' competitive standing in the invention services industry and would give their competitors an advantage when seeking to sell their products and services. Plaintiffs' Motion

---

671. However, some of the *Pansy* factors, including factors two and three, are inconsistent with the standard of the common law right of access. *Id.* at 676-77.

[3]    At this preliminary juncture and with the limited record before it, the Court has not yet discerned whether these materials constitute trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, or the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5301 *et seq*. Such determination is not necessary because the Court may seal proprietary or otherwise confidential material regardless of whether such material constitutes a trade secret. *See Avandia*, 924 F.3d at 679 (observing that "courts may permissibly seal judicial records where they are sources of business information that might harm a litigant's competitive standing") (internal quotation marks and citation omitted).

and contemporaneously filed Complaint also supports a finding that Exhibit B had been subject to efforts that are reasonable under the circumstances to maintain its secrecy because Plaintiffs shared it with Defendants and others who were signatories to an RSD Agreement containing confidentiality and non-disclosure provisions. The Court finds that Plaintiffs have a "compelling, countervailing interest [in the information contained in Exhibit B] to be protected." *Avandia*, 924 F.3d at 672. Accordingly, the Court finds that Plaintiffs' request to seal Exhibit B and to redact certain averments in the Complaint and Brief meets the applicable common law standard for doing so.

The Court must now determine whether this information should also remain sealed under the First Amendment right of access. When the First Amendment right attaches, "[a]ny restriction on the right of public access is evaluated under strict scrutiny" and a party may only rebut the presumption in favor of access by "demonstrate[ing] an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Avandia*, 924 F.3d at 673 (citation omitted). The party seeking to seal the information, Plaintiffs here, "bears the burden of showing that the material is the kind of information that courts will protect and that there is good cause for the order to issue." *Publicker*, 733 F.2d at 1071.

Again, the record before the Court reflects that Exhibit B and certain averments related thereto contain confidential and proprietary business information that is of the kind that courts will protect. *See Publicker*, 733 F.2d at 1073; *Cutsforth*, 2020 WL 772442 at *2. Moreover, the Court also finds good cause for sealing Exhibit B and redacting certain related averments in the Complaint and Brief because of Plaintiffs' overriding interest in excluding such materials from disclosure because the potential harm public access to those materials would bear upon Plaintiffs'

6

competitive standing in the invention services industry. Finally, the Court finds that sealing Exhibit B and redacting specific averments in the Complaint and Brief that would cause such harm if disclosed to the public is narrowly tailored to serve that interest.

### III. SPECIFIC FINDINGS

An item by item review must be conducted to determine if "the strong presumption of openness can be overcome by the secrecy interests of private litigants." *Avandia*, 924 F.3d at 673 (quoting *Leucadia,* 998 F.2d at 167). Accordingly, the Court makes an individualized analysis of each proposed redaction or seal request as follows:

| Request No. | Description | Confidential Materials | Plaintiffs' Rationale for Redacting or Sealing | Court's Findings |
|---|---|---|---|---|
| No. 1 | Exhibit B to the Complaint | PowerPoint presentation that Susa created relative to the sale and marketing of innovative new product offerings and groupings for a new invention services platform. | Susa invested substantial time, energy, and resources in developing a services model not previously seen in the competitive invention services industry. Certain services revealed by Susa had never been offered in the invention services industry; the PowerPoint presentation reveals confidential details as to pricing, marketing strategy, and the services themselves. Moreover, the PowerPoint details how various elements of the business model coordinate to provide an innovative, new approach for inventor clients. Disclosing this information would materially harm Susa's ability to attract customers and would also give potential competitors an advantage when attempting to sell to Susa's customers.<br><br>Disclosing the PowerPoint would result in Susa's confidential business strategy and model being revealed to the general public. | Exhibit B contains the type of information that derives independent economic value from not being generally known by others who can obtain economic value from its disclosure. If these pieces of information were to be released to the public, it would materially harm Plaintiffs' competitive standing in the invention services industry and would give their competitors an advantage when seeking to sell their products and services. Exhibit B had been subject to efforts that are reasonable under the circumstances to maintain its secrecy because Plaintiffs shared it with Defendants and others who were signatories to an RSD Agreement containing confidentiality and non-disclosure provisions. Plaintiffs have a compelling, countervailing interest in the information contained in Exhibit B to be protected from public disclosure. |

| No. 2 | The chart in Plaintiffs' Brief in Support of their Motion for Preliminary Injunction | Chart that compares the product and service offerings of Defendants' new business with those outlined in the PowerPoint prepared by Susa. | Susa invested substantial time, energy, and resources in developing a services model not previously seen in the competitive invention services industry. The chart details the services package, which reflects new, innovative ideas that Susa developed, is refining, and which he is not currently offering to the public. Disclosing this information would materially harm Susa's ability to attract new customers and would also give potential competitors an advantage when attempting to sell to Susa's customers.<br><br>Because the services offered by Defendants are a near-perfect copy of the services offered under Susa's new model, disclosing the services developed by Susa as compared to those peddled by Defendants would have a detrimental effect on Susa's ability to benefit from the business concepts developed by his efforts and at his expense. | The contents of this chart contain the type of information that derives independent economic value from not being generally known by others who can obtain economic value from its disclosure. If these pieces of information were to be released to the public, it would materially harm Plaintiffs' competitive standing in the invention services industry and would give their competitors an advantage when seeking to sell their products and services. The contents of this chart, which is derived from the contents of Exhibit B, had been subject to efforts that are reasonable under the circumstances to maintain its secrecy because Plaintiffs shared it with Defendants and others who were signatories to an RSD Agreement containing confidentiality and non-disclosure provisions. Plaintiffs have a compelling, countervailing interest in the information contained in the chart to be protected from public disclosure.<br><br>However, the redacted text in the Brief immediately preceding this chart does not contain such information; rather, that text merely asserts a conclusory argument regarding the contents of the chart referenced above. |

| No. 3 | Paragraph No. 10 of the Complaint | Allegations that describe and provide a link to Defendants' competitive business model, which copies language, concepts, product offerings, and ideas developed by InventHelp and, separately, new services and concepts revealed by Susa in confidence at a November 2019 meeting. | Susa invested substantial time, energy, and resources in developing a services model not previously seen in the competitive invention services industry. Publicizing the link to the bootlegged services package, which reflects new, innovative ideas that – individually and as a package – are not currently available to the public through Susa promotes the broader dissemination of the purloined trade secrets. | With the exception of the specific reference to Defendants' website address referenced at Paragraph 43 and elsewhere in the Complaint and its related business moniker as expressed in quotation marks within Paragraph 10 of the Complaint, the contents of Paragraph 10 does not reveal proprietary or otherwise confidential information appropriate for redaction. |
| --- | --- | --- | --- | --- |
| No. 4 | Paragraph Nos. 33, 35, and 42-56 of the Complaint | Allegations that describe in detail the November 2019 meeting at which Susa disclosed his new invention services model and the business plan revealed by Susa, as well as the PowerPoint itself, as compared to the website for Defendants' new business, which essentially copies the information provided during the November 2019 meeting verbatim. | Susa invested substantial time, energy, and resources in developing a services model not previously seen in the competitive invention services industry. Publicizing the particulars of the bootlegged services package, which reflects new, innovative ideas that – individually and as a package – are not being offered to the public – promotes the broader dissemination of the purloined trade secrets.<br><br>Further, articulating the subject matter of the November 2019 meeting would result in the public exposure of protected information relayed in confidence to a small, exclusive group of professionals. Understanding that the Complaint's description of Plaintiffs' services necessarily includes information revealed at the November 2019 meeting (inclusive of references to the PowerPoint exhibit that Plaintiffs assert should remain sealed), along with multiple references and links to Defendants' website promoting the purloined trade secrets, dissemination of the subject paragraphs would expose the subject matter of Susa's November 2019 meeting and the PowerPoint to the view of market competitors. | The text of Paragraph 33 merely references the existence of Exhibit B and characterizes its contents as being proprietary and secret, but the text does not reveal proprietary or otherwise confidential information appropriate for redaction.<br><br>The redacted portion of the text of Paragraph 35 merely characterizes Plaintiffs' proprietary offerings as confidential, but the text does not reveal proprietary or otherwise confidential information appropriate for redaction.<br><br>The text of Paragraph 42 makes conclusory allegations of misappropriation of the contents of Exhibit B and related materials but does not reveal proprietary or otherwise confidential information appropriate for redaction.<br><br>Paragraph 43 of the Complaint contains a reference to a mechanism whereby the public could obtain Plaintiffs' proprietary and confidential information such as that contained in Exhibit B. As |

| | | | | |
|---|---|---|---|---|
| | | | | such, and for the reasons expressed regarding Item No. 1 above, the Court finds that Paragraph 43 may remain redacted to protect its contents from public disclosure.<br><br>Paragraph Nos. 44, 53, 55, and 56 aver that the materials Defendants purportedly misappropriated are proprietary and confidential, but these averments do not reveal the underlying information and thus do not reveal proprietary or otherwise confidential information appropriate for redaction.<br><br>Paragraph Nos. 45-52, and 54 contain specific references to Plaintiffs' proprietary and confidential information as put forth in Exhibit B. As such, and for the reasons expressed regarding Item No. 1 above, the Court finds that Paragraph Nos. 45-52, and 54 may remain redacted to protect their contents from public disclosure. |

## IV.  **CONCLUSION**

In sum, the Court finds that Plaintiffs have shown good cause as to why certain of their proposed redactions should remain under seal. Accordingly, Plaintiffs will be ordered to re-file their Complaint and Brief in Support of their Motion for Preliminary Injunction with the following redactions as specifically reflected in the chart above: as to paragraph 10 of the Complaint, only Defendants' business moniker as expressed in quotation marks in said paragraph shall be redacted; paragraphs 43, 45-52 and 54 of the Complaint shall be redacted in their entirety, Exhibit B to the

Complaint shall be filed under seal; and the chart in Plaintiffs' Brief shall be redacted.[4]  No other items in Plaintiffs' filings shall be redacted or filed under seal at this juncture.

      An appropriate order follows.

*W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date: March 10, 2021

cc/ecf:  All counsel of record

---

[4]  As stated above, the currently redacted text in Plaintiffs' Brief immediately preceding the chart is not subject to redaction.